UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Larry Kennedy**, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>**Subcontracting Concepts, LLC**, a Delaware Limited Liability Company; **Smyth Automotive, Inc**., an Ohio Corporation, and **John Doe Corporations I-XX**,<br>                    Defendants. | No.<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff, Larry Kennedy ("Plaintiff"), sues the Defendant, Subcontracting Concepts, LLC ("Defendant SCI"), Smyth Automotive, Inc., ("Defendant Smyth"), and John Doe Corporations I-XX (collectively "Defendants") and allege as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.; Kentucky Revised Statutes ("KRS") § 337.285; and Ohio Revised Code Ann. ("ORC") § 4111.03 for Defendants' failure to pay Plaintiff all earned overtime wages.

2.      The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981).  Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks.  See 29 U.S.C. § 206(a). Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  See 29 U.S.C § 207.

-1-

3.      KRS § 337.285 establishes the law regarding overtime within the State of Kentucky.

4.      ORC § 4111.03 establishes the law regarding overtime within the State of Ohio.

5.      Plaintiff brings this action on behalf of himself and all similarly-situated current and former employees of Defendants who were delivery drivers[1] classified by Defendants as independent contractors.

6.      Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendants for their unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

7.      Plaintiffs, individually, and on behalf of all others similarly-situated, bring this action against Defendants for their unlawful failure to pay overtime due and owing Plaintiff and others similarly-situated in violation of KRS § 337.285.

8.      Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendants for their unlawful failure to pay overtime due and owing Plaintiff and others similarly-situated in violation of ORC § 4111.03.

9.      Plaintiff brings a collective action under the FLSA to recover the unpaid overtime owed to him individually and on behalf of all other similarly-situated employees, current and former, of Defendants.  Members of the Collective Action are referred to as the "Collective Members."

---

[1] For the purposes of this Complaint, "delivery drivers" is exclusively a job title used for the purpose of classifying the putative class of similarly situated individuals, is not necessarily the job title of Plaintiffs and putative class, and has no bearing or relation to any specialization, skill, education, training, or other qualification that might otherwise be associated with such a job title.

10.     Additionally, Defendants' failure to compensate Plaintiff and all other similarly-situated employees at a rate equal to Kentucky's required overtime rates violates Kentucky Revised Statutes § 337.285.  Plaintiff, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Kentucky wage laws.  Members of the Kentucky Rule 23 Class Action are referred to as the "Kentucky Class Action Members."

11.     Additionally, Defendants' failure to compensate Plaintiff and all other similarly-situated employees at a rate equal to Ohio's required overtime rates violates Ohio Revised Statutes § 4111.03.  Plaintiff, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Ohio wage laws.  Members of the Ohio Rule 23 Class Action are referred to as the "Ohio Class Action Members."

12.     The Collective Members are all current and former employees who worked as delivery drivers for Defendants and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

13.     The Kentucky Class Action Members are all current and former employees who worked as delivery drivers for Defendants in the State of Kentucky and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

14.     The Ohio Class Action Members are all current and former employees who worked as delivery drivers for Defendants in the State of Ohio and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

15.     Defendants own and operate a company that functions as an auto parts courier and whose primary marketplace offering is providing auto parts delivery services.

16.     At all relevant times, Defendants have operated pursuant to a policy and practice of intentionally misclassifying Plaintiffs and all other similarly-situated employees as independent contractors.

17.     At all relevant times, pursuant to this misclassification, Defendants have willfully refused to pay overtime to its delivery drivers, including Plaintiff and all other similarly situated individuals.

18.     In willfully refusing to pay overtime wages, Defendants have violated the overtime provisions of 29 U.S.C. § 207.

19.     In willfully refusing to pay overtime wages, Defendants have violated the overtime provisions of Kentucky Revised Statutes § 337.285.

20.     In willfully refusing to pay overtime wages, Defendants have violated the overtime provisions of Ohio Revised Code Ann. § 4111.03.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States.  This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the Southern District of Ohio, and

Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

**PARTIES**

23.     At all material times, Plaintiff is an individual residing in Campbell County, Kentucky, and is a former employee of Defendants.

24.     At all material times, Defendant SCI is a Delaware limited liability company licensed to transact business in the State of Kentucky.  At all material times, Defendant SCI does business, has offices, and/or maintains agents for the transaction of its customary business in Boone County, Kentucky.

25.     At all material times, Defendant SCI is a limited liability company licensed to transact business in the State of Ohio.  At all material times, Defendant SCI does business, has offices, and/or maintains agents for the transaction of its customary business in Hamilton County, Ohio.

26.     At all relevant times, Defendant SCI was an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant SCI had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant SCI is subject to liability under the FLSA.

27.     At all material times, Defendant Smyth is an Ohio corporation licensed to transact business in the State of Kentucky.  At all material times, Defendant Smyth does business, has

offices, and/or maintains agents for the transaction of its customary business in Boone County, Kentucky.

28.     At all material times, Defendant Smyth is a corporation licensed to transact business in the State of Ohio.  At all material times, Defendant Smyth does business, has offices, and/or maintains agents for the transaction of its customary business in Hamilton County, Ohio.

29.     At all material times, Defendant Smyth does business as "Smyth Auto Parts."

30.     At all relevant times, Defendant Smyth was an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant Smyth had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Smyth is subject to liability under the FLSA.

31.     Upon information and belief, Defendant(s) John Doe Corporations I-XX are and/or were, at all times relevant herein, individuals, groups, partnerships, and/or other entities which: (1) may have been contracted by Defendant Home Depot U.S.A., Inc. to perform delivery services; (2) may have hired individuals, including the Collective and Class Action Members to perform delivery services for Defendant Home Depot U.S.A., Inc.; (3) may have been involved in Plaintiffs' and the Collective and Class Action Members' damages; and/or (4) are otherwise proper parties to this lawsuit.  The identities of Defendant(s) John Doe Corporations I-XX remain unknown despite Plaintiffs' due diligence.

32. At all relevant times, Defendant(s) John Doe Corporations I-XX were employers under the FLSA. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. At all relevant times, Defendant(s) John Doe Corporations I-XX had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants. As a person who acted in the interest of Defendants in relation to the company's employees, Defendant(s) John Doe Corporations I-XX is subject to liability under the FLSA.

33. Upon information and belief, Defendant(s) John Doe Corporations I-XX do business as "Expedite."

34. At all material times, Defendants SCI, Smyth, and John Doe Corporations I-XX are Plaintiffs' "employer" as defined by the FLSA, 29 U.S.C. § 201, *et seq*.

35. At all material times, Defendants SCI, Smyth, and John Doe Corporations I-XX are Plaintiffs' "employer" as defined by Kentucky Revised Statutes § 337.010, *et seq*.

36. At all material times, Defendants SCI, Smyth, and John Doe Corporations I-XX are Plaintiffs' "employer" as defined by Ohio Revised Code § 4111, *et seq*.

37. Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiffs' work and wages at all relevant times.

38. At all material times, Defendants have operated as a "single enterprise" within the meaning of Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose; namely, the operation of a delivery company operating under the name "Expedite."

39.     At all material times: (1) Defendants were not completely disassociated with respect to the employment of Plaintiffs; and (2) Defendants were under common control.  In any event, at all relevant times, all Defendants were joint employers under the FLSA.

40.     Defendants are engaged in related activities, *i.e.* all activities which are necessary to the operation and maintenance of the aforementioned delivery service.

41.     Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

42.     Plaintiff, in his work for Defendants, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

43.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in commerce or the production of goods for commerce.

44.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in interstate commerce.

45.     Plaintiff, in his work for Defendants, regularly handled goods produced or transported in interstate commerce.

## NATURE OF THE CLAIM

46.     Defendants do business as Subcontracting Concepts, LLC. and provide auto part delivery services to customers.

47.     Plaintiff was hired by Defendants and worked for Defendants as a delivery driver from approximately May 2019 through approximately March 2020.

48.     At all relevant times, in his work for Defendants, Plaintiff worked as a delivery driver, delivering auto parts to Defendants' customers.

49.     Defendants, in their sole discretion, agreed to compensate Plaintiff at a rate of $12.78 per hour.  Plaintiff was compensated this rate by Defendants regardless of how many hours he worked in a given workweek.

50.     Plaintiff, in his work for Defendants, typically worked 45 hours or more per week.

51.     Rather than classify Plaintiff as an employee, Defendants classified him as an independent contractor.

52.     As a matter of common policy and practice, Defendants misclassify all of their delivery drivers as independent contractors.

53.     Consistent with this common policy and practice, Plaintiff and others similarly situated individuals have been intentionally misclassified by Defendants as independent contractors.

54.     As a result of Defendants' common misclassification policy, Defendants have not paid overtime pay to Plaintiffs and others similarly situated.

55.     Defendants required Plaintiff and others similarly situated to work approximately 45 hours or more in a given workweek.

56.     The FLSA applied to Plaintiff and all individuals similarly situated at all times during which they worked for Defendants.  No exceptions or exemptions to the FLSA apply to Plaintiff and those similarly situated.

57.     Upon information and belief, Defendants employed hundreds of delivery drivers throughout the relevant time period without paying them overtime pay, and while denying them the rights and benefits due an employee.

58.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff and similarly situated individuals.

59.     At all relevant times, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to other putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members who also worked as delivery drivers for Defendants.

60.     Plaintiffs and the putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as independent contractors and failing to pay them overtime pay.

61.     Because Defendants failed to pay their employees proper wages, the putative Collective Members', Kentucky Class Action Members', and Ohio Class Action Members' income consisted solely of the hourly rate of pay they received for all hours worked.

62.     Defendants' misclassification of Plaintiff and other putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members as independent contractors was specifically intended to enhance Defendants' profit margins at the expense of the putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members by willfully suffering and permitting Plaintiffs and the putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members to work in excess of 40 hours in a given workweek without paying overtime compensation at a rate of one and one-half times their regular rates and adopting and implementing employment policies that violate the FLSA, KRS § 337.285, and ORC § 4111.03.

63. Defendants' misclassification of Plaintiff and those similarly situated was willful.

64. Defendants knew or should have known that it was improper to classify Plaintiff and the putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members as independent contractors.

65. Workers in the putative Collective and Classes cannot "elect" to be treated as employees or independent contractors. Nor can workers in the putative Collective or Classes agree to be paid less than the applicable minimum wage. Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative Collective and Classes to waive their statutory rights and elect to be treated as independent contractors.

66. Any contract which attempts to have workers in the putative Collective and Classes waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

67. The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract. Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

68. Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer;

(2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

69.     The totality of circumstances surrounding the employment relationship between Defendants and the putative Collective and Classes establishes economic dependence by the putative Collective and Classes on Defendants and employee status.  Here, Plaintiff and all individuals similarly situated are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in Defendants.  The putative Collective and Classes are not engaged in occupations or businesses distinct from that of Defendants.  To the contrary, the putative Collective and Classes are the basis for Defendants' business. Defendants obtain the customers who seek out delivery services, and Defendants provide the workers who conduct the deliveries on behalf of Defendants.  Defendants retain pervasive control over the business operation as a whole, and putative Collective and Classes.

**Degree of Control Exercised by Defendants**

70.     Plaintiff and the other members of the putative Class do not exert control over any meaningful part of Defendants' business operation and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiff and the other Class members.

71.     Plaintiff and Class members' economic status is inextricably linked to conditions over which Defendants have complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

72. Defendants exercise the following significant control over the work conditions of Plaintiffs and others similarly situated:

    a.     The work performed by the delivery drivers, including Plaintiff and putative Collective and Class Members, is akin to a specialty job on the production line;

    b.     Defendants require Plaintiff and putative Collective and Classes to work 45 hours or more per week;

    c.     Defendants pay Plaintiff and the putative Collective and Classes a flat hourly rate for all hours worked in a given workweek;

    d.     Defendants made the decision not to pay overtime to their delivery drivers, including Plaintiff and the putative Collective and Class Members;

    e.     Defendants direct Plaintiff and the putative Collective and Classes with respect to which deliveries to make;

    f.     Defendants exercise control over setting the schedules for their delivery drivers, including Plaintiff and the putative Collective and Class Members;

    g.     Defendants require Plaintiff and the putative Collective and Classes to wear Defendants' uniform;

    h.     Defendants supervised their delivery drivers, including Plaintiff and the putative Collective and Class Members, and subjected them to the same rules as W-2 drivers employed by Defendants;

    i.     Defendants require Plaintiffs and the putative Collective and Classes to use forms and invoices Defendants provided; and

j.     Defendants require Plaintiffs and the putative Collective and Classes to deliver to Defendants all invoices and customer service reports within the same day of each service job/run.

**Facts Establishing No Skill or Initiative of a Person in Business for Themselves**

73.     Plaintiff, like all members of the putative Collective and Classes, does not exercise the skill and initiative of a person in business for oneself.

74.     Plaintiff and the putative Collective and Classes are not required to have any specialized or unusual skills to perform their jobs. The sills used in performing delivery services are commensurate with those exercised by ordinary people.

75.     Plaintiff, like all members of the putative Collective and Classes, does not have the opportunity to exercise the business skills and initiative necessary to elevate his status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

76.     Plaintiff and the putative Collective and Classes has no control over customers, nor does he actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

77.     Defendants do not permit Plaintiff and the putative Collective and Classes to hire or subcontract other qualified individuals to provide additional delivery services to customers, thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

**Facts Establishing Relative Investment**

78.     Plaintiffs' and the putative Collective's and Classes' relative investment is minor when compared to the investment made by Defendants.

-14-

79.     Plaintiffs and the putative Collective and Classes make no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships.  All capital investment and risk belong to Defendants.

80.     Plaintiff's and the putative Collective's and Classes' investment is limited to fuel. Absent Defendants' investment and provision of the business, the delivery drivers would not earn anything.

**Facts Establishing Opportunity for Profit and Loss**

81.     Defendants manage all aspects of the business operation, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff.  Defendants provide all necessary capital to open and operate the business.

82.     Neither Plaintiff nor the putative Collective and Classes have responsibility for any aspect of Defendants' ongoing business risk.

**Facts Establishing Permanency**

83.     Plaintiff worked for Defendants as a delivery driver from approximately May 2019 through approximately March 2020 in Defendants' Florence, Kentucky area location, often travelling into Ohio to make deliveries.

**Fact Establishing Members of the Putative Collective and Classes Are an Integral Part of Defendants' Business**

84.     Plaintiff and the putative Collective and Classes are critical to Defendants' success.  Defendants' operation is wholly dependent on the delivery services that Plaintiff and the putative Collective and Classes provide for customers.

85.     The primary "product" or "good" Defendants are in business to sell consists of delivery services provided by members of the putative Collective and Classes.

86.     Members of the putative Collective and Classes, like Plaintiff, are economically dependent on Defendants and subject to significant control by Defendants.

**Facts Establishing that Defendants' Acts Were Willful**

87.     All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

88.     Defendants were aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiff and Members of the putative Collective and Classes were misclassified as independent contractors.

89.     Delivery drivers working under conditions similar to those employed with Defendants have been determined to be employees–not independent contractors–in other FLSA cases.

## INJURY AND DAMAGE

90.     Plaintiff and all Members of the putative Collective and Classes suffered harm, injury, and damages, including financial loss, as a result of Defendants' conduct complained of herein.

91.     Plaintiff and all Members of the putative Collective and Classes were entitled to a minimum wage and overtime pay for their work performed for Defendants.  Further, Defendants were not allowed to make improper and unlawful deductions from Plaintiff's and the Members' of the putative Collective and Classes pay.  By failing to pay Plaintiff and the Members of the putative Collective and Classes a minimum wage and overtime pay and interfering with their right to retain all of their earnings, Defendants injured Plaintiff and the Members of the putative Collective and Classes and caused them financial loss, harm, injury, and damage.

## FLSA COLLECTIVE ACTION ALLEGATIONS

92.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93.    Plaintiff brings the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

94.    Plaintiff asserts those claims on behalf of himself, and on behalf of all similarly situated delivery drivers of Defendants, who were not paid all minimum wage and overtime compensation required by the FLSA during the relevant time period as a result of Defendants' compensation policies and practices.

95.    Plaintiff seeks to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

> **All delivery drivers (or individuals with other similar job duties or titles) who worked for Defendants and were misclassified as independent contractors at any time during the past three years.**

96.    The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of the Act. 29 U.S.C. § 255.  As alleged above, Plaintiff and similarly situated delivery drivers' claims arise out of Defendants' willful violations of the FLSA.  Accordingly, the Court should require appropriate notice of this action be given to all tipped employees employed by Defendants within three years from the filing of this Complaint.

97.    Upon information and belief, Defendants have employed more than one thousand (1,000) delivery drivers during the period relevant to this action.

98.    The identities of these individuals, as a group, are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiff, joinder of each member is not practicable.

99.     Because these similarly situated employees are readily identifiable by Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

100.    Collective adjudication is appropriate in this case because the individuals whom Plaintiff wishes to notify of this action have been employed in positions similar to Plaintiffs; have performed work similar to Plaintiff; and have been subject to compensation practices similar to those to which Plaintiff have been subjected, including unlawful misclassification as independent contractors and failure to pay the applicable overtime rates as required by the FLSA.

## KENTUCKY CLASS ACTION ALLEGATIONS

101.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102.    Plaintiff brings his Kentucky wage claims as a Rule 23 class action on behalf of the following Kentucky Class Action Members:

> **All delivery drivers (or individuals with other similar job duties or titles) who worked for Defendants in Kentucky and were misclassified as independent contractors at any time during the past three years.**

103.    <u>Numerosity</u>.  The number of Kentucky Class Action Members is believed to be over two hundred.  This volume makes bringing the claims of each individual Kentucky Class Action Member before this Court impracticable.  Likewise, joining each individual Kentucky Class Action Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Kentucky Class Action Members will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means

of resolving these claims. To require individual actions would prejudice the Kentucky Class Action Members and Defendants.

104. <u>Typicality</u>. Plaintiff's Kentucky claims are typical of the Kentucky Class Action Members because like the Kentucky Class Action Members, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as the other Kentucky Class Action Members. Defendants regularly required Plaintiff and the Kentucky Class Action Members to work in excess of 40 hours in a given workweek without paying them overtime. Defendants misclassified Plaintiff and the Kentucky Class Action Members as independent contractors. This was commonly, though not exclusively, done in order to prevent Plaintiff and the Kentucky Class Action Members from being paid overtime for all hours worked in excess of 40 in a given workweek. As a result, Defendants failed to pay Plaintiff and the Kentucky Class Action Members overtime for all hours worked.

105. As a result of such policy and practice by Defendants, Defendants violated the overtime wage provisions of Kentucky Revised Statutes § and 337.285.

106. <u>Adequacy</u>. Plaintiff is a representative party who will fairly and adequately protect the interests of the Kentucky Class Action Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Kentucky law. Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Kentucky Class Action Members he seeks to represent.

107. <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

a. The number of hours worked by Plaintiff and the Kentucky Class Action Members;

b. The amounts paid to Plaintiff and the Kentucky Class Action Members;

c. The degree of control Defendants exerted over Plaintiff and the Kentucky Class Action Members;

d. The relative investments of Defendants and Plaintiff and the Kentucky Class Action Members;

e. The degree to which Plaintiff's and the Kentucky Class Action Members' opportunity for profit and loss was determined by Defendants;

f. The skill and initiative required in performing the job;

g. The permanency of the relationship; and

h. The degree to which Plaintiff's and the Kentucky Class Action Members' tasks are integral to Defendants' business.

108. Common issues of law include, but are not limited to:

a. Whether Defendants paid all minimum wages due and owing to Plaintiff and the Kentucky Class Action Members;

b. Whether Defendants paid overtime wages due and owing to Plaintiff and the Kentucky Class Action Members for all hours worked in excess of 40 in a given workweek;

c. Whether Defendants improperly misclassified Plaintiff and the Kentucky Class Action Members as independent contractors;

d. Whether Plaintiff and the Kentucky Class Action Members are entitled to compensatory damages;

e.     The proper measure of damages sustained by Plaintiff and the Kentucky
Class Action Members; and

f.     Whether Defendants' actions were "willful."

109.    <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any of the Kentucky Class Action Members could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the system.  Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits.  Prosecution of separate actions by individual Kentucky Class Action Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

110.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court and Judge.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Kentucky Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Kentucky Class Action Members are readily identifiable from Defendants' records.

111.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees.

112.     Ultimately, a class action is a superior forum to resolve the Kentucky state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Kentucky Class Action Members according to applicable Kentucky laws.

113.     <u>Nature of Notice to be Proposed</u>.  As to the Rule 23 Kentucky Class Action Members, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Kentucky Class Action Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

## OHIO CLASS ACTION ALLEGATIONS

114.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

115.     Plaintiff brings his Ohio wage claims as a Rule 23 class action on behalf of the following Ohio Class Action Members:

> **All delivery drivers (or individuals with other similar job duties or titles) who worked for Defendants in Ohio and were misclassified as independent contractors at any time during the past three years.**

116.     <u>Numerosity</u>.  The number of Ohio Class Action Members is believed to be over two hundred.  This volume makes bringing the claims of each individual Ohio Class Action Member before this Court impracticable.  Likewise, joining each individual Ohio Class Action Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Ohio Class Action Members will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these

claims.  To require individual actions would prejudice the Ohio Class Action Members and Defendants.

117.  <u>Typicality</u>.  Plaintiff's Ohio claims are typical of the Ohio Class Action Members because like the Ohio Class Action Members, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as the other Ohio Class Action Members.  Defendants regularly required Plaintiff and the Ohio Class Action Members to work in excess of 40 hours in a given workweek without paying them overtime.  Defendants misclassified Plaintiff and the Ohio Class Action Members as independent contractors.  This was commonly, though not exclusively, done in order to prevent Plaintiff and the Ohio Class Action Members from being paid overtime for all hours worked in excess of 40 in a given workweek.  As a result, Defendants failed to pay Plaintiff and the Ohio Class Action Members both minimum wage and overtime for all hours worked.

118.  As a result of such policy and practice by Defendants, Defendants violated the minimum and overtime wage provisions of Ohio Revised Code § 4111.

119.  <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Ohio Class Action Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Ohio law.  Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Ohio Class Action Members she seeks to represent.

120.  <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

a.      The number of hours worked by Plaintiff and the Ohio Class Action Members;

b.      The amounts paid to Plaintiff and the Ohio Class Action Members;

c.      The degree of control Defendants exerted over Plaintiff and the Ohio Class Action Members;

d.      The relative investments of Defendants and Plaintiff and the Ohio Class Action Members;

e.      The degree to which Plaintiff's and the Ohio Class Action Members' opportunity for profit and loss was determined by Defendants;

f.      The skill and initiative required in performing the job;

g.      The permanency of the relationship; and

h.      The degree to which Plaintiff's and the Ohio Class Action Members' tasks are integral to Defendants' business.

121.      Common issues of law include, but are not limited to:

a.      Whether Defendants paid all minimum wages due and owing to Plaintiff and the Ohio Class Action Members;

b.      Whether Defendants paid overtime wages due and owing to Plaintiff and the Ohio Class Action Members for all hours worked in excess of 40 in a given workweek;

c.      Whether Defendants improperly misclassified Plaintiff and the Ohio Class Action Members as independent contractors;

d.      Whether Plaintiff and the Ohio Class Action Members are entitled to compensatory damages;

      e.      The proper measure of damages sustained by Plaintiff and the Ohio Class

            Action Members; and

      f.      Whether Defendants' actions were "willful."

122.    <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any of the Ohio Class Action Members could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the system.  Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits.  Prosecution of separate actions by individual Ohio Class Action Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

123.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court and Judge.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Ohio Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Ohio Class Action Members are readily identifiable from Defendants' records.

124.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees.

125.    Ultimately, a class action is a superior forum to resolve the Kentucky state law claims set forth in this Complaint because of the common nucleus of operative facts centered on

the continued failure of Defendants to pay Plaintiff and the Ohio Class Action Members according to applicable Ohio laws.

126.   <u>Nature of Notice to be Proposed</u>.  As to the Rule 23 Ohio Class Action Members, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Ohio Class Action Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

<b><u>COUNT ONE: FAIR LABOR STANDARDS ACT</u></b><br/><b><u>FAILURE TO PAY OVERTIME</u></b><br/><b>(Against All Defendants)</b>

127.   Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

128.   Defendants willfully failed or refused to pay Plaintiff and the Collective Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

129.   As a result, Defendants failed to compensate Plaintiff and the Collective Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

130.   Defendants' practice of willfully failing or refusing to pay Plaintiff and the Collective Members at the required overtime wage rate violates the FLSA, 29 U.S.C. § 207(a).

131.   Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during

Plaintiff's and the Collective Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

132.     Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Larry Kennedy, individually, and on behalf of all delivery drivers similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT TWO: KENTUCKY REVISED STAUTES § 337.285
## FAILURE TO PAY OVERTIME FOR HOURS IN EXCESS OF 40
### (Against All Defendants)

133.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

134.     Defendants willfully failed or refused to pay Plaintiff and the Kentucky Class Action Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

135.     As a result, Defendants failed to compensate Plaintiff and the Kentucky Class Action Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

136.     Defendants' practice of willfully failing or refusing to pay Plaintiff and the Kentucky Class Action Members at the required overtime wage rate violates Kentucky Revised Statutes § 337.285.

137.     Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Kentucky Class Action Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff's and the Kentucky Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

138.     Plaintiff and the Kentucky Class Action Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Larry Kennedy, individually, and on behalf of all delivery drivers similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

**COUNT THREE: OHIO REVISED CODE § 4111**
**FAILURE TO PAY OVERTIME**
**(Against All Defendants)**

139.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

140. Defendants willfully failed or refused to pay Plaintiff and the Ohio Class Action Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

141. As a result, Defendants failed to compensate Plaintiff and the Ohio Class Action Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

142. Defendants' practice of willfully failing or refusing to pay Plaintiff and the Ohio Class Action Members at the required overtime wage rate violates the overtime provisions of ORC § 4111.

143. Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Ohio Class Action Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff's and the Ohio Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

144. Plaintiff and the Ohio Class Action Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiff, Larry Kennedy, individually, and on behalf of all delivery drivers similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys'

fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 21ˢᵗ day of April, 2021.

BENDAU & BENDAU PLLC

By: /s/ *Clifford P. Bendau, II*
Clifford P. Bendau, II (OH No. 0089601)
BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176
Email: cliffordbendau@bendaulaw.com

THE LAW OFFICES OF SIMON & SIMON

By: /s/ *James L. Simon*
James L. Simon (OH No. 0089483)
6000 Freedom Square Dr.
Independence, OH 44131
Telephone: (216) 525-8890
Facsimile: (216) 642-5814
Email: jameslsimonlaw@yahoo.com